UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JENNIFER HOWARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:10-CV-103 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| RENT-A-CENTER, INC., and ) | |
| RENT-A-CENTER EAST, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

Before the Court is a motion to compel arbitration (Court File No. 7), brought by Defendants Rent-A-Center, Inc., and Rent-A-Center East, Inc. (collectively, "Defendants"). Also before the Court are three motions filed by Plaintiff Jennifer Howard ("Plaintiff"): a motion to stay the proceedings (Court File No. 10), a motion requesting discovery (Court File No. 10), and a motion for leave to file an amended complaint (Court File No. 16).

For the following reasons, the Court will **GRANT** Plaintiff's motion to amend the complaint (Court File No. 16), will **DENY** Plaintiff's motions for a stay and discovery (Court File No. 10), will **GRANT** Defendant's motion to compel arbitration (Court File No. 7), and will **STAY** this proceeding pending arbitration.

**I.     BACKGROUND**

Because this motion is a pre-discovery motion to dismiss, the Court views all facts alleged in the complaint in the light most favorable to Plaintiff (Court File No. 1). The facts as alleged are as follows.

In May 2007 Plaintiff began employment with Defendants as an assistant manager in the

financial services division, located in Chattanooga, Tennessee. Thereafter, Plaintiff received two major promotions, ultimately obtaining the title of Financial Services Manager.

In July 2009, Plaintiff informed her employers she was pregnant. Thereafter, Plaintiff was told by a supervisor she needed to improve her performance to show the company she cared about it more than about having babies. Approximately one week after this comment, Plaintiff was advised her pregnancy required the company to transfer her to a different store, located in McMinnville, Tennessee. Plaintiff's supervisor told her she believed Plaintiff was too stressed over the pregnancy, and the McMinnville location would be a less stressful location for her to work.

The transfer was devastating to Plaintiff. The transfer resulted in a three-hour daily commute, for which Plaintiff was not compensated, even though she was expect to frequently pick up supplies at the Chattanooga location and deliver them to the McMinnville location. The transfer also resulted in Plaintiff receiving a pay cut.

In the Fall of 2009, Plaintiff complained about her treatment. Around the same time, Plaintiff learned of severe complications with her pregnancy. After consultations with her physician, Plaintiff asked she be re-transferred back to the Chattanooga location. When this request was granted, Plaintiff returned to Chattanooga, but she was demoted to an inferior management position and was not returned to her previous salary.

Following complications with her pregnancy, Plaintiff was forced to take time off from work under the Family and Medical Leave Act ("FMLA"). Thereafter, in retaliation for exercising this right, Plaintiff was terminated. Based upon this treatment, Plaintiff alleges claims of sex discrimination, retaliation under the FMLA, as well as violations of the Equal Pay Act and the Fair Labor Standards Act.

## II.     DISCUSSION

### A. Motion to Compel Arbitration

Defendants' motion to compel arbitration is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* Under the FAA, arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Rent-A-Center, West, Inc. v. Jackson*, ___ S.Ct. ___, No. 09-497, 2010 WL 2471058, at *4 (June 21, 2010). Moreover, the provisions of the FAA are mandatory. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (emphasis in original) (citing 9 U.S.C. §§ 3-4).

A party may avoid arbitration in either of two ways: 1) by showing the dispute at hand is beyond the scope of the arbitration agreement, or 2) by showing the agreement itself is invalid or unenforceable. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 91 (2000). In addition, to show the validity of the agreement is in question, the party opposing arbitration must show a genuine issue of material fact as to agreement's validity. *Id.*

In this case, Plaintiff brings multiple challenges to the scope and validity of the arbitration agreement. Several of these challenges are based upon contract law. For example, Plaintiff argues the agreement lacks consideration and was mutually rescinded though the parties' course of conduct (Court File No. 11 at 5–7). In addition, Plaintiff argues the arbitration agreement is unenforceable

as an unfair labor practice under the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151 *et seq.* (*id.* at 7–10). Finally, Plaintiff argues the agreement is unconscionable, unduly oppressive, and provides for an illusory remedy (*id.* at 10 .

Defendant counters the parties' agreement delegates to the arbitrator all of Plaintiff's challenges to arbitrability. Thus, Defendant argues the Court must compel arbitration without addressing the merits of Plaintiff's arguments (Court File No. 8 at 9–11; Court File No. 14 at 2–4).

Typically, whether the parties have an enforceable arbitration agreement covering their dispute is an issue the court must decide. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, ___ S.Ct. ___, No. 08-1214, 2010 WL 2518518, at *7 (June 24, 2010); *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83–84 (2002); *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) . In such cases, the Court must resolve any issues related to whether the parties have an enforceable agreement to arbitrate and whether the scope of that agreement extends to the parties' dispute. *Granite Rock*, 2010 WL 2518518, at *8; *Fazio*, 340 F.3d at 392.

The parties are free, however, to delegate such gateway determinations to the arbitrator himself. *See Granite Rock*, 2010 WL 2518518, at *8; *Rent-A-Center*, 2010 WL 2471058, at *4. If the court concludes the parties intended such a delegation and concludes that delegation is enforceable, the court must compel arbitration on issues relating to arbitrability along with the underlying dispute. *Rent-A-Center*, 2010 WL 2471058, at *4. To be enforceable, such delegations are subject to a heightened standard: the parties' intent to arbitrate the issue of arbitrability must be demonstrated by "clear and unmistakable evidence." *Rent-A-Center*, 2010 WL 2471058, at *4 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Thus, the threshold question before the Court is whether there is clear and unmistakable

4

evidence the parties intended to delegate to the arbitrator issues of arbitrability. If so, the Court's work is finished, and the Court must compel arbitration without addressing the merits of Plaintiff's challenges to arbitrability. *See id.*; *Dean Witter Reynolds*, 470 U.S. at 218 ("[D]istrict courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

In this case, there appears to be no dispute Plaintiff consented to two form arbitration agreements during her employment with Defendants. Though Plaintiff does not expressly acknowledge these agreements, she does not dispute their existence and does not allege her signature to be forged on the copies submitted by Defendants. Moreover, Defendants have provided an affidavit attesting to these forms' authenticity (Court File No. 7, Ex. 1), whereas Plaintiff has submitted nothing which would create a genuine issue of material fact concerning the existence of an arbitration agreement. *See Green Tree*, 531 U.S. at 91. Therefore, the Court assumes for the purposes of this motion the form arbitration agreements submitted by Defendants (Court File No. 7, Ex. 1) are authentic memorializations of the parties' agreement to arbitrate. *See Pennington v. Frisch's Restaurants, Inc.*, 147 F. App'x 463, 467 (6th Cir. 2005).

Both of these forms contain identical terms. Neither form, however, expressly includes clear and unmistakable language to the effect of "we agree to arbitrate arbitrability." *See Book Depot Partnership v. Am. Book Co.*, No. 3:05-CV-163, 2005 WL 1513155, at *3 (E.D. Tenn. June 24, 2005). Acknowledging this, Defendants maintain the parties clearly and unmistakably intended to delegate arbitrability by invoking the rules of the American Arbitration Association ("AAA"), the

Judicial Arbitration & Mediation Services ("JAMS"), and the National Arbitration Forum ("NAF").[1] The applicable rules for all three of these organizations expressly provide that the arbitrator has the authority to decide his or her own jurisdiction, including issues regarding the existence, validity, and scope of the agreement to arbitrate.[2] Defendant argues by invoking these rules, the parties clearly and unmistakably intended to invoke the arbitrator's stated authority to resolve issues related to arbitrability.

The Sixth Circuit has not yet addressed whether reference to an organization's rules constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability. So far, however, all of the circuit courts of appeals to have considered this issue have held that it does. *See Bishop v. Gosiger, Inc.*, 692 F. Supp. 2d 762, 769 (E.D. Mich. 2010) (reviewing cases); *T.Co Metals, LLC v. Dempsey Pipe & Supply,* Inc., 592 F.3d 329, 344-45 (2d Cir. 2010) (citing *Contec Corp. v.*

---

[1]Both agreements contain the following: "The Company and I agree that, except as provided in this Agreement, any arbitration shall be in accordance with the then-current National Employment Arbitration Procedures of the AAA or equivalent (if AAA is designated), the then-current JAMS Employment Arbitration Rules or equivalent (if JAMS is designated), the then-current NAF Code of Procedure (if NAF is desiganted), or the applicable rules of any other service to which the parties mutually agree." (Court File No. 7, Ex. 1 at 7, 13).

[2]Rule 6(a) of the AAA Employment Arbitration Rules and Mediation Procedures provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *See Awuah v. Coverall North America, Inc.*, 554 F.3d 7, 9 (1st Cir. 2009). Rule 20(F) of the NAF Code of Procedure provides: "An Arbitrator shall have the power to rule on all issues, Claims, Responses, questions of arbitrability, and objections regarding the existence, scope, and validity of the Arbitration Agreement including all objections relating to jurisdiction, unconscionability, contract law, and enforceability of the Arbitration Agreement." *See Bhim v. Rent-A-Center, Inc.*, 655 F. Supp. 2d 1307, 1311 n.2 (S.D.Fla. 2009). Rule 11(c) of the JAMS Employment Arbitration Rules & Procedures provides: "Jurisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of the agreement under which the Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator." *See id.*

*Remote Solution Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005)); *Awuah v. Coverall North Am., Inc.* 554 F.3d 7, 10-12 (1st Cir. 2009) (citing *Apollo Computer, Inc. v. Berg*, 886 F.2d 469 (1st Cir. 1989));*Fallo v. High-Tech Institute*, 559 F.3d 874, 877-78 (8th Cir. 2009) (citing *FSC Securities Corp. v. Freel*, 14 F.3d 1310 (8th Cir. 1994)); *Terminix Int'l Co., L.P. v. Palmer Ranch L.P.*, 432 F.3d 1327 (11th Cir. 2005). Even a different district judge speaking on behalf of this Court has agreed:

> Although the Sixth Circuit has not addressed this issue, a significant majority of courts . . . 'have held that when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.

*Book Depot Partnership*, 2005 WL 1513155, at *4 (quoting *Contec Corp.*, 398 F.3d at 208). Pursuant to this authority, the Court concludes the parties in this case clearly and unmistakable delegated arbitrability by referencing the rules of the AAA, JAMS, and NAF in their agreement.

Plaintiff opposes delegation, however, contending delegation would be unconscionable and would violate public policy (Court File No. 11 at 23–25; Court File No. 20 at 3–5). In the Supreme Court's recent *Rent-A-Center* decision, the Court clarified how courts must treat challenges to an arbitration agreement's delegation provision. *See* 2010 WL 2471058. According to the Supreme Court, the analysis depends on the kind of challenge being made. If the challenge relates to the arbitration agreement as a whole, and the agreement contains a delegation provision, then the challenge must be directed to arbitration. *Id.* If the challenge is specific to the issue of delegation, however, then the Court must resolve the challenge. *Id.* Because Plaintiff's argument that delegation itself is unenforceable is specific to the issue of delegation, it must be resolved by this Court.

7

Plaintiff argues delegation is unenforceable because it is unconscionable. First, Plaintiff argues it is contrary to public policy to allow an arbitrator to determine whether his exercise of jurisdiction is appropriate. Second, Plaintiff notes the arbitration agreement allows Defendants to choose among three potential forums–AAA, JAMS, or NAF. Plaintiff contends this advantage, coupled with the gross inequality in the parties bargaining power, renders the delegation provision unconscionable (Court File No. 20 at 3–4).

In Tennessee, adhesion contracts, such as employment arbitration agreements, "are unenforceable only when the terms are 'beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable.'" *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 976 (6th Cir. 2007) (quoting *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996)). "A contract is unconscionable when the 'inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Id.* at 977 (quoting *Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984)). "Courts will not enforce adhesion contracts which are 'oppressive to the weaker party or which serve to limit the obligations and liability of the stronger party.'" *Id.* (quoting *Buraczynski*, 919 S.W.2d at 320).

Plaintiff's chief argument appears to be with allowing the arbitrator determine his own jurisdiction: "It would be absurd to allow a tribunal such as the National Arbitration Forum to determine whether or not Plaintiff should prevail in her argument that the National Arbitration Forum is not an effective forum for vindicating statutory rights." (Court File No. 11 at 24-25).

Plaintiff's argument, however, is rooted in an out-dated general distrust of the integrity of arbitrators. The Supreme Court has held the FAA reflects a general recognition by Congress of "the

8

desirability of arbitration as an alternative to the complications of litigation." *Wilko v. Swan*, 346 U.S. 427, 431 (1953). In other words, the purpose of the FAA was to reverse "centuries of judicial hostility to arbitration agreements." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510 (1974). Plaintiff's criticism of arbitrators' ability to assess their own jurisdiction springs from that out-dated hostility. As such, it is incongruent with "the congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). For this reason, the Court concludes allowing arbitrators determine their own jurisdiction is neither contrary to the public policy nor unconscionable.

Plaintiff's second argument is equally unpersuasive. Plaintiff argues allowing Defendants to choose among the three arbitration organizations grants Defendants an unfair advantage to the extent that doing so would be unconscionable. Plaintiff offers no specific reason, however, why any of these three organizations does not provide a neutral forum, other than that Defendants may choose among them.

In support of her argument, Plaintiff cites *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370 (6th Cir. 2005). In *Walker*, the court addressed a different arbitration organization–the Employment Dispute Services, Inc. ("EDSI"). EDSI was a for-profit business which generated over 42% of its income from the annual dues Ryan's paid each year to remain a signatory company. *Id.* at 385-86. In addition, EDSI's arbitration procedures required that one of the three arbitrators assigned to a case be a supervisor or manager from another EDSI signatory company and a second arbitrator be an employee of a second signatory company. *Id.* Addressing this arrangement, the Sixth Circuit concluded EDSI did not provide a neutral forum: "Given the symbiotic relationship between Ryan's and EDSI, Ryan's effectively determines the three pools of arbitrators, thereby

9

rendering the arbitral forum fundamentally unfair to claimants who are applicants or employees." *Id.* at 386.

Unlike the circumstances in *Walker*, Plaintiff offers no criticism of the procedures of any the three potential arbitrating organizations in this case. *See id.* Because she does not, the Court can find no reason to doubt the neutrality of any of the three organizations. *See Green Tree*, 531 U.S. at 91 (placing the burden on the party resisting arbitration). Moreover, that Defendants may choose among the three entities does not render delegation unconscionable. If all three organizations are presumed neutral, there is no advantage in choosing among them. Because Plaintiff has not demonstrated Defendants obtain any unfair advantage by choosing the arbitrating organization, delegation is not unconscionable. *See Seawright*, 507 F.3d at 976.

In this case, the arbitration agreement itself contains clear and unmistakable evidence the parties intended to delegate issues related to arbitrability. *See Book Depot Partnership*, 2005 WL 1513155, at *4. Because that delegation is enforceable, the Court *must* direct the parties to proceed to arbitration on any issues related to arbitrability. In other words, the Court need not address the gateway issues of whether Plaintiff's complaint is governed by the arbitration agreement or whether the arbitration agreement suffers from some legal defect, because the parties have agreed to arbitrate these questions as well. *See Rent-A-Center*, 2010 WL 2471058, at *4. Therefore, the Court will grant Defendant's motion to compel arbitration.

### B. Stay versus Dismissal

Under the FFA, if a court determines a cause of action is covered by an arbitration agreement, it must stay the proceedings until the arbitration is complete. 9 U.S.C. § 3. In addition, the Sixth Circuit also allows district courts to dismiss an action where all of the claims are arbitrable.

10

*Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). In this case, because the parties have agreed to delegation questions of arbitrability, the Court has not determined whether all of Plaintiff's claims are covered by the arbitration agreement. *See Rent-A-Center*, 2010 WL 2471058, at *4. If the arbitrator should conclude some of Plaintiff's claims fall outside the scope of their agreement, she will have a right to return to this Court to prosecute those claims. Therefore, the Court will order these proceedings be stayed, rather than dismissed, pending the parties' arbitration.

### C. Plaintiff's Motion for Discovery and/or a Stay

Plaintiff filed a motion requesting the Court delay ruling on Defendants' motion to compel arbitration to allow Plaintiff to conduct discovery. All of Plaintiff's proposed discovery, however, relates to the merits of her challenges to the enforceability of the arbitration agreements. As discussed above, because these issues must be decided in arbitration, rather than before this Court, Plaintiff's requested discovery at this stage is irrelevant. The arbitration agreement grants the parties specific discovery rights, and states "the Arbitrator shall have the exclusive authority to consider and enter orders concerning any issue arising related to the quantity or conduct of discovery." (Court File No. 7, Ex. 1 at 6). Consequently, the Court concludes Plaintiff's request for discovery is controlled by the parties agreement. *See Dean Witter Reynolds*, 470 U.S. at 218. Plaintiff's motion for discovery will be denied.

Plaintiff also brings a motion requesting the Court delay resolution of Defendants' motion until the National Labor Relations Board ("NLRB") issues a decision on a claim recently filed by Plaintiff. Plaintiff has filed a claim before the NLRB seeking a ruling that the arbitration agreement in this case constitutes an unfair labor practice (Court File No. 11 at 7). Because the NLRB investigation relates to one of Plaintiff's challenges to arbitrability, and because all challenges to

11

arbitrability have been delegated, Plaintiff's request is not well taken. Plaintiff's request will be denied.

### D. Plaintiff's Motion to Amend

Plaintiff also seeks leave to file an amended complaint. As discussed above, because an arbitrator will be assessing the scope and validity of the arbitration agreement, the amended complaint can have no affect on the Court's analysis of Defendant's motion to compel arbitration.

Defendant opposes Plaintiff's motion, arguing the amendment would be futile. *See Courie v. Alco Wheel & Forged Prod.*, 577 F.3d 625, 633 (6th Cir. 2009) ("[A] motion to amend a complaint should nevertheless be denied if the amendment would be futile." (internal quotations and citations omitted)). This argument, however, is premised on Defendant's assertion that this case should be dismissed pending arbitration. As discussed above, it is possible the arbitrator will decide in this case some of Plaintiff's claims are not arbitrable. If Plaintiff's amended claims are in this category, amendment now would not be futile.

In favor of allowing amendment, Plaintiff notes the statutory requirement that certain claims under Title VII be filed within 90 days after receiving a right to sue letter from the Equal Employment Opportunity Commission. *See* 42 U.S.C. § 2000e-5(f)(1); *Hollimon v. Shelby County Gov't*, 325 F. App'x 406, 409 (6th Cir. 2009). Plaintiff fears not allowing amendment at this time may prevent her from asserting these claims during or even following arbitration (Court File No. 26 at 1-2).

Amendment of pleadings are governed by Rule 15 of the Federal Rules of Civil Procedure. Under Rule 15(a)(2), the Court "should freely give leave when justice so requires." The Court concludes justice so requires amendment in this case. First, Defendants have identified no prejudice

12

which may arise as a result of allowing amendment. Second, the amendment would not be futile, as there is some chance Plaintiff may eventually return before this Court to prosecute her amended claims. Third, Plaintiff has identified severe consequences which may attach should the motion be denied. Accordingly, Plaintiff's motion to amend will be granted.

### III. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Plaintiff's motion to amend, will **DENY** Plaintiff's motion for a stay and/or discovery, will **GRANT** Defendant's motion to compel arbitration, and will **STAY** this proceeding pending arbitration.

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**